UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA   ]          Docket No. 13-CR-30028 (MGM)
                           ]
        - against -        ]
                           ]
JOSEPH BUFFIS,             ]
                           ]
        Defendant          ]
_____]

## MOTION FOR JUDGMENT OF ACQUITTAL

At trial, the defendant orally made a Motion for a Judgment of Acquittal at the end of

the Government's case, and then orally renewed said Motion for a Judgment of Acquittal after

the jury rendered its verdict of guilty on one count of Extortion under the theory of "extortion

under color of official right" on June 9, 2015.   Under Fed.R. Crim. P. Rule 29 (c) (1), the

defendant had up until fourteen (14) days after the verdict was rendered to file such a motion,

however, the Court allowed his Motion for an Extension of Time in which to file.

**The Evidence Presented at Trial**[1]

The only evidence relevant to the jury's guilty verdict on Count One of the Indictment

charging Extortion under 18 U.S.C. § 1851(a) was supplied in testimony offered by the two

alleged  victims of the alleged extortion – Tara Viola ("Viola") and Thomas Fusco ("Fusco")

and in a rebuttal to that testimony offered by the defendant, Joseph Buffis ("Buffis").  A

careful review of the transcripts of Viola and Fusco's trial testimony provided no basis for this

Court to have submitted the extortion count to the jury and/or for the jurors to have concluded

---

[1] For purposes of this Motion, the defendant will only refer to the evidence relative to the count of conviction.
Moreover, the defendant will not set forth a detailed recitation of the facts, as this Court presided over the trial and is
familiar with the background of the count of conviction.

that the government sustained their burden of proving each element of the crime of Extortion

Under Color of Official Right beyond a reasonable doubt.

Most significantly, Viola acknowledged at trial[2] that when confronted by law

enforcement officers, specifically Sergeant Christopher Meiklejohn and Officer Ryan Lucy,

about her acts of prostitution, she told them that she had earned approximately $4000 "from

the massages." TV at 12. In response to questioning on direct examination by AUSA Shukla

about her offer to cooperate with the police, Viola testified that she thought she told

"Meiklejohn I'd do whatever as long as I don't lose my kids." TV at 13. During a recorded

interview, parts of which were played for the jury, Viola volunteered to Meiklejohn and Lucy

that she wanted to donate $6000 in her account to charity, because she believed it was "dirty

money" and she didn't want to keep it. TV at 19 – 20; 77, 80.

Fusco testified that after the police raided the Inn, he had a series of telephone

conversations with Lucy in which he was inquiring about what steps, if any, the police would

be taking with respect to a court proceeding. TF at _____. During one such conversation it

appeared to Fusco that Lucy was also speaking with Buffis, and that after speaking with

Buffis, informed Fusco that "the chief [Buffis] said that if we were to agree to donate the

proceeds from the prostitution to a local charity, that would handle it at the magistrate level."

TF at 55. He stated "I thought it would be great because it would be a big relief for Tara

[Viola]". *Id.* Fusco further testified that when he spoke with Buffis about the plan to donate

the proceeds to charity and that Buffis would have the magistrate "dismiss the case due to a

---

[2] Portions of trial transcript shall be referred to as TV at __ for references to Tara Viola's testimony and TF at __ for references to Thomas Fusco's testimony.

lack of probable cause. . . I thought it was a good way to do it," and said to Buffis "[t]hat sounds great." TF at 58-59.

Further confirmation of the dearth of evidence of Buffis' intent to extort Fusco and Viola under color of official right was offered by Fusco when he testified about a telephone conversation with Buffis prior to the magistrate hearing in which they discussed the donation of proceeds and a continuance of the charges for one year. Fusco testified that he asked Buffis if he would consider making the "continuance down to nothing," to which Buffis agreed to "something about one day." When asked how that idea sounded to him, Fusco testified "[i]t was my idea. I thought it was a great idea." TF at 63-64.

Again in further support of Buffis' lack of intent to extort under the color of official right was the acknowledgement by Fusco (and a review of the transcript of the hearing) that during the magistrate hearing, Buffis specifically put on the record that "we're going to continue this until the end of today . . . they're going to donate the proceeds." TF at 88. Had Buffis believed his actions were unlawful in any way, he would not have put on the record, in front of the clerk-magistrate, the fact that a donation was being made and that the case would not go forward.

The government will surely argue that there was ample proof of Buffis' intent to extort by using his office to obtain a payment he wasn't entitled to. They will point to Viola's testimony about why she and Fusco agreed to a $4000 donation to a charity rather than a $1000 to a dog rescue shelter in which she stated that she "just felt threatened if we didn't do it so we did what we in a court of law were told to do." TV at 34. They will further point to Viola's unresponsive testimony during redirect examination in which she answered AUSA Shukla's

questioning about how the news story in the Berkshire Eagle that incorrectly reported that she

and Fusco had been arrested affected her "desire to give the defendant the $4000 donation for

his toy fund," to which she responded "[w]e didn't feel like we had a choice."  TV at 87.

The government may also point to Fusco's testimony that although he didn't want to agree to

the non-disclosure portion of the agreement that Buffis presented to them, he felt "like there

was no choice."  TF at 74, and that even though he and Viola didn't want to donate the

proceeds to the Toy Fund but rather wanted to donate to the Sonsini Animal Shelter, again he

"felt like we didn't have a choice."   TF at 74, 79.

However, these statements at trial are in contrast to what actually occurred, as testified

to by both Viola and Fusco.  Viola testified that she and Fusco had consulted with an attorney,

Aaron Wilson, about Buffis' suggestion that they donate the prostitution proceeds to charity,

and that Wilson told them that some people do make donations in lieu of paying fines or

restitution.  TV at 84.    Similarly, Fusco testified that when he spoke Wilson about donating

the prostitution proceeds to charity, Attorney Wilson "said that it seemed like a common way

of doing things; . . . "   TF at 146.

What is critically, and for the government, fatally absent, is any testimony by Viola or

Fusco supporting an inference that Buffis knowingly used the color of his office to induce them

in any way to make the donation.  The record evidence is clear that Buffis did not intend that

the donation be given in order to influence his decision as to whether to go forward with

criminal charges or not, but was rather his acceptance of their offer to donate the proceeds of

prostitution to charity as a means of ridding themselves of what Viola repeatedly referred to in

her interactions with Meiklejohn and Lucy as "dirty money."   Viola's offer to donate the

proceeds to charity preceded Buffis' acceptance of that offer; his decision to not pursue a criminal complaint stemmed from his personal belief that the couple had suffered enough already because of negative publicity coupled with his belief that Viola and Fusco were clearly remorseful, had been otherwise law-abiding citizens and presented no risk of reoffending.

## ARGUMENT

As succinctly and eloquently stated by the Honorable Jack Weinstein, "[e]ffective exercise of the power to grant a judgment of acquittal furnishes defendants with necessary protection against conviction on inadequate proof." *United States v. Melillo*, 275 F.Supp. 314, 317 (E.D.N.Y. 1967).   Having presided over the trial in the instant matter, this Court must now undertake to exercise its considerable power to enter a judgment of acquittal on Count One, Extortion Under Color of Right, because there was insufficient evidence upon which any rational trier of fact could have found that the government sustained its burden of proof as to such crime.

In deciding a Motion for a Judgment of Acquittal after the return of a verdict under F.R.Crim.P. Rule 29, a court "[m]ust determine whether a rational jury drawing reasonable inferences . . .from the evidence viewed in the light most favorable to the government . . . could have found guilt beyond a reasonable doubt." *See, Villarreal Corro v. United States*, 516 F.2d 137, 140 (1st Cir. 1975) (citations omitted).  *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979); *United States v. Canessa*, 534 F.2d 402, 403 (1st Cir. 1976).

Here, based upon the testimony of Fusco and Viola, records of the show-cause hearing and the testimony of Buffis himself[3], no rational juror could have found guilt beyond a reasonable doubt.

During its charge to the jury, this Court instructed the jurors, *inter alia,* on the elements of extortion that the government was required to prove beyond a reasonable doubt to support a guilty verdict.  In pertinent part, the Court charged:

> To prove extortion under color of official right, the government must show that Mr. Buffis was a public official and he received a payment he was not entitled to receive with knowledge that the payment was provided to him in exchange for some official act.  It is not necessary for the government show that Mr. Buffis made any specific request or demand for money or acted in a particular way in order to induce Tara Viola or Thomas Fusco to consent to pay the money.  Passive acceptance of a benefit by a public official is sufficient if the official knows that he is being offered or tendered the payment in exchange for the exercise of his official power.

*See also, United States v. Turner,* 684 F.3d 244, 254 (1st Cir. 2012).   Here, the evidence clearly established that Viola had offered to donate the sum of $6,000 to charity from the time she was first confronted by law enforcement officers, prior to any involvement in the investigation on the part of Buffis and prior to any discussion of how any potential criminal charges might be handled.   Viola persisted in offering to donate the ill-gotten "dirty money" throughout the period of time between the raid on the Inn and the date of the show-cause hearing, all prior to Buffis' involvement in the handling of the matter.  The evidence did not support the jury's finding that Buffis "knew he was being offered . . . payment in exchange for the exercise of his official power," but rather showed that he was accepting an offer that had been previously and repeatedly made by Viola without regard to any potential official acts.

---

[3] Counsel respectfully suggests that this Court may consider the fact that the jury acquitted Buffis of every other count of the Indictment as indicative of the jurors' acceptance of Buffis' testimony regarding his use of Toy Fund donations and his lack of intent to hide his use of such funds by laundering the donations.

**CONSLUSION**

Because there was insufficient evidence from which any rational juror could have found

that Buffis intended to use his office to induce a donation to which he was not otherwise

entitled, viewing the evidence in a light most favorable to the government, this Court must

now enter a judgment of acquittal as to Count One of the Indictment.


                                        Respectfully submitted,
                                        JOSEPH BUFFIS
                                        By His Attorney

                                        /s/    Lori H. Levinson, Esq.
                                        Lori H. Levinson, Esq.
                                        BBO#566685
                                        The Law Office of Lori H. Levinson, PC
                                        500 Main Street, Suite 2
                                        Great Barrington, MA  01230
                                        413.528.2355
                                        413.528.2315 (facsimile)


September 11, 2015




                         CERTIFICATE OF SERVICE

I certify that I sent this Motion to all persons designated for receipt of ECF filings in this
matter by filing it through the ECF system on September 11, 2015.


                                        /s/   Lori H. Levinson, Esq.
                                        Lori H. Levinson, Esq.